**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

OFF-WHITE LLC.,

        Plaintiff,

   -against-

1000PERCENT1000 et al.

        Defendants.
----------------------------------------------------------------X

       **21-CV-3626 (PAE) (VF)**

       <u>**AMENDED REPORT AND**</u>
        <u>**RECOMMENDATION**</u>

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**TO: THE HONORABLE PAUL A. ENGELMAYER, United States District Judge.**

## <u>INTRODUCTION</u>

On April 23, 2021, Plaintiff Off-White LLC ("Off-White") commenced this action asserting claims against 30 Defendants for trademark counterfeiting, trademark infringement, infringement of unregistered trademark, false designation of origin, passing off and unfair competition under the Lanham Act, as well as unfair competition under New York law.[1] See ECF No. 7 at ¶¶ 44-95. To date, 16 Defendants ("Defaulting Defendants") have not appeared or had the claims against them dismissed. For the reasons set forth below, I respectfully recommend that Off-White be awarded damages under the Lanham Act in a total amount of $1,200,000 plus post-judgment interest.[2]

---

[1]The 30 Defendants are: 1000percent1000, cicada-orange, cisan64, dnpg-ffoos, fly-pe-47, fox-dogwood, good-morning-store, goose-redbud, hongshizit603, ins-home36, jinboyanc380_5, likuan01, litia905793, litian-24, liulipingq, lsmsumi777, mantis-quince, mouse-peony, off44ever, panda-hawthorn, sjbnsj, squirrel-ca_25, tiantiany86, tortoise-wisteria, wenjing1, wolf-azalea, yeezyandme, yqc262511_0, zebra-hibiscus, and zhongh_55. See ECF No. 7 at 3.

[2] This Amended Report and Recommendation amends the prior Report and Recommendation filed on November 26, 2024. See ECF No. 47. Such an amendment is permitted pursuant to Federal Rule of Civil Procedure 60(a), which allows the Court to, by

## BACKGROUND

### A. Factual Background

Off-White is a limited liability company doing business in New York that sells a "high-end lifestyle streetwear line of men's and women's apparel, as well as accessories, jewelry, homeware and other ready-made goods." ECF No. 7 at ¶¶ 5, 7. Defendants are merchants on eBay, an online marketplace. Id. at ¶ 6.

Off-White products are marketed under the trademarks "Off White" and "Off-White C/O Virgil Abloh," as well as through a number of design marks featuring diagonal lines or intersecting dual-sided arrows (collectively, the "Off White Marks"). Id. at ¶¶ 8, 13. Since 2013, "the Off-White Diagonal Design has been, and currently still is, applied to the Off-White Products themselves, and [as early as] 2016, the Off-White Arrow Design has been, and currently still is, applied to the Off-White [p]roducts themselves. The Off-White Trade Dress is also applied to tags, labels, containers, packaging and displays for the Off-White Products." Id., at ¶ 8. As reflected in Off-White's federal trademark registrations, the constructive date of first use is January 25, 2012. Id. at ¶ 13.

Off-White products are sold at luxury retailers such as Bergdorf Goodman and Selfridges, as well as Off-White's boutiques located in prominent fashion epicenters like London, Tokyo, Hong Kong, and New York City. Id. at ¶ 9. Off-White products have also been featured in various publications, including *New York Magazine*, *GQ*, and *Vogue*. Id. at ¶ 10. Off-White engages in significant advertising and marketing efforts on social media, Off-White's own

---

motion or on its own, "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a).

website, retailer websites, and in other internet-based and print mediums in New York and across the world. Id. at ¶ 15.

Off-White products typically retail for between $150.00 and $2,500.00. Id. at ¶ 11. Off-White attributes its success to "its use of high-quality materials and processes in making the Off-White [p]roducts," as well as "its consumers and word-of-mouth buzz that its consumers have generated." Id. at ¶¶ 16-17. These factors have "made the Off-White [p]roducts and Off-White Marks prominently placed in the minds of the public[,]" such that "[r]etailers, retail buyers, consumers and members of the public have become familiar with the Off-White [p]roducts and Off-White Marks and associate them exclusively with Off-White." Id. at ¶ 18. This has led Off-White and the Off-White Marks to "acquire[] a valuable reputation and goodwill among the public." Id. at ¶ 19. Absent "express written permission" from Off-White, no one is permitted to "manufacture, import, export, advertise, offer for sale or sell any goods utilizing Off-White Marks." Id. at ¶ 20.

Defendants are a group of "merchants" on eBay.com, an online marketplace platform that is owned and operated by eBay Inc. Id. at ¶ 6. eBay is an e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell, and ship their products, whether in auction-style or fixed-price formats, directly to consumers in the United States. Id. at ¶ 21. eBay is one of the most popular e-commerce platforms in the world, with a base of 25 million third-party merchants and 168 million active buyers. Id. at ¶ 22. A significant number of third-party merchants that have storefronts on eBay are, like all Defendants here, based in China. Id. Recent news reports and federal lawsuits indicate that an "astronomical number" of counterfeit and infringing products are offered for sale and sold on eBay. Id. at ¶ 24.

Through their user accounts and merchant storefronts, Defendants offer for sale and/or sell counterfeit Off-White products on eBay and ship those products to customers in the United States, including customers located in New York. Id. at ¶¶ 26, 30. Defendants have never been authorized to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell Off-White products or to use marks that are "confusingly similar" to the Off-White Marks. Id. at ¶ 31. The counterfeit Off-White products on Defendants' merchant storefronts are "nearly indistinguishable" from the Off-White Products." Id. at ¶ 32.

Through counsel, Off-White identified that Defendants were offering for sale and/or selling Off-White counterfeit products to a New York shipping address and verified that each Defendant offers shipping to a New York address. Id. at ¶ 33. Off-White also "confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective User Accounts and/or Merchant Storefronts" on eBay and is accepting payment for its Off-White counterfeit products in U.S. dollars. Id. at ¶ 34.

The actions of Defendants occurred "long after" Off-White's adoption, use, and registration of the Off-White Marks, and after Off-White's products became well-known to the public. Id. at ¶ 38. Defendants "had knowledge of [Off-White]'s ownership of the Off-White Marks, of the fame and incalculable goodwill associated" with those marks, and "of the popularity and success of the Off-White [p]roducts, and in bad faith adopted the Off-White Marks." Id. at ¶ 39. Defendants "have been engaging in the illegal counterfeiting and infringing actions . . . knowingly and intentionally, or with reckless disregard or willful blindness to [Off-White]'s rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Off-White, the Off-White Marks and the Off-White [p]roducts." Id. at ¶ 40. Defendants' actions have damaged Off-White by "causing consumers to erroneously believe that" the counterfeit Off-

4

White products sold by Defendants are "licensed by or otherwise associated with [Off-White]." Id. at ¶ 41.

## B.  Procedural History

On April 23, 2021, Off-White filed the instant action against Defendants, asserting five causes of action: (1) trademark counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), 1117(b)-(c); (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) infringement of unregistered trademark under the Lanham Act, 15 U.S.C. § 1125; false designation of origin, passing off, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); and (5) unfair competition under New York law. ECF No. 7 at ¶¶ 44-95. Off-White also moved ex parte for an order to seal, a temporary restraining order ("TRO") halting any further sale by Defendants of their counterfeit products, an order restraining Defendants' assets with financial institutions and their merchant storefronts, an order to show cause why a preliminary injunction should not issue, an order authorizing bifurcated and alternative service, and an order authorizing expedited discovery. ECF Nos. 11, 12, 13. On April 23, 2021, the Honorable P. Kevin Castel granted Off-White's ex parte applications and entered a TRO enjoining Defendants from continuing to sell counterfeit Off-White products on eBay. ECF No. 14 at 1. Judge Castel also directed the parties to appear at a hearing on May 7, 2021 to discuss Off-White's application for a preliminary injunction. Id. On April 29, 2021, pursuant to the alternative methods of service authorized by the Court, Off-White served each and every Defendant with the Summons and Complaint, as well as copies of the TRO and all papers filed in support of Off-White's application. ECF No. 25 at ¶ 7; ECF No. 17.

On April 23, 2021, this matter was assigned to the Honorable Paul A. Engelmayer. See ECF No. 5. On May 7, 2021, the Court held a show cause hearing regarding Off-White's

application for a preliminary injunction. ECF Nos. 14, 15. No Defendant appeared at the hearing. ECF No. 30 at ¶ 16. That same day, the Court extended the injunctive relief previously granted through the TRO, requiring that it "remain in place through the pendency of this litigation." ECF No. 6 at 1. On May 13, 2021, Off-White served this preliminary injunction order on 17 of the 30 named Defendants. ECF No. 18 at ¶ 7.

On May 19, 2021, Defendant Cindi Sanders (cisan64) requested an extension of time to answer Off-White's complaint. ECF No. 19. The Court granted the request on May 20, 2021. ECF No. 20. Defendant cisan64 never answered the complaint.

On May 20, 2021, Off-White moved under Federal Rule of Civil Procedure 41 for voluntary dismissal without prejudice of all claims against 13 Defendants who never received service.[3] ECF No. 22; ECF No. 40 at ¶ 25. The Court granted the Rule 41 motion on May 21, 2021, dismissing the claims against those 13 Defendants. ECF No. 23.

On May 20, 2021, the Court referred this matter to the Honorable Debra C. Freeman for general pretrial supervision. ECF No. 21. On May 21, 2021, Off-White moved for the entry of default against the 17 remaining Defendants. ECF Nos. 24, 25. On May 24, 2021, the Clerk of Court entered a Certificate of Default against the 17 Defendants. ECF No. 26. On June 1, 2021, Off-White moved under Federal Rule of Civil Procedure 41 for voluntary dismissal without prejudice of all claims against Defendant cisan64. ECF No. 27. The Court granted the motion on June 4, 2021, dismissing the claims against Defendant cisan64. ECF No. 28. On June 17, 2021, Off-White filed a Motion for Default Judgment and a Permanent Injunction against the 16 remaining Defendants. ECF Nos. 29-32. On June 22, 2021, the Court issued an order stating that,

---

[3] These 13 Defendants are: cicada-orange, dnpg-ffoos, fly-pe47, fox-dogwood, goose-redbud, ins-home36, mantis-quince, mouse-peony, panda-hawthorn, squirrel-ca_25, tortoise-wisteria, wolf-azalea and zebra-hibiscus.

if any Defendant wished to oppose the motion, they would be required to file an opposition explaining why a default judgment is not warranted on or before July 20, 2021. ECF No. 33 at 2. No Defendant filed an opposition to the motion for default judgment.

On December 6, 2021, the Court directed Off-White to submit Proposed Findings of Fact and Conclusions of Law in support of an award for damages. See ECF No. 38 at ¶ 1. Off-White filed its Proposed Findings of Fact and Conclusions of Law on January 5, 2022. See ECF Nos. 40-42. That same day, Off-White served the Court's scheduling order and its inquest papers on the 16 remaining Defendants. See ECF No. 43 at ¶ 5. Defendants were given until February 4, 2022, to submit a response. ECF No. 38 at ¶ 4. No Defendant provided a response to Off-White's submissions. To date, none of the 16 remaining Defendants have appeared in this action.

On March 21, 2022 Judge Engelmayer entered a default judgment as to liability against the 16 Defaulting Defendants.[4] ECF No. 44 at 2. On March 22, 2022, Off-White served this Order on each and every Defaulting Defendant. ECF No. 45 at ¶ 5. On April 30, 2022, the Court referred this case to the undersigned for an inquest on damages. See ECF No. 46.

## DISCUSSION

### A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs judgments against a party that has failed to plead or otherwise defend itself in an action. See Au Bon Pain Corp. v. Artect, Inc., 653 F.3d 61, 65-66 (2d Cir. 1981). Rule 55 requires a two-step process for an entry of a default judgment. See Priestley v. Headminder, Inc., 647 F.3d 497, 504-05 (2d Cir. 2011) (per curiam);

---

[4] The 16 Defaulting Defendants are: 1000percent1000, good-morning-store, hongshizit603, jinboyanc380_5, likuan01, litia905793, litian-24, liulipingq, lsmsumi777, off44ever, sjbnsj, tiantiany86, wenjing1, yeezyandme, yqc262511_0, and zhongh_55. See ECF No. 44.

Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 392-93 (S.D.N.Y. 2012).

First, upon notification from the moving party, the Clerk of Court enters the default of the party

failing to plead or otherwise defend the moving party's suit. See Priestley, 647 F.3d at 504-05

(citing Fed. R. Civ. P. 55(a)). Second, once the Clerk of Court issues a certificate of default, the

moving party may apply for the entry of a default judgment pursuant to Rule 55(b). Id. at 505.

       A default constitutes an admission of all well-pled factual allegations in the complaint.

Thus, a plaintiff's allegations in the complaint, as they pertain to liability, are deemed true. See

Finkel v. Romanowicz, 577 F.3d 79, 88 n.6 (2d Cir. 2009) (noting that an entry of default

establishes liability but does not constitute an admission of damages); Cotton v. Slone, 4 F.3d

176, 181 (2d Cir. 1993) (explaining that "factual allegations are taken as true in light of the

general default judgment"). However, a plaintiff is not entitled to a default judgment as a matter

of right merely because the opposing party is in default. See Bricklayers & Allied Craftworkers

Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 187 (2d

Cir. 2015). A plaintiff bears the burden of demonstrating that their uncontroverted allegations are

sufficient to establish a defendant's liability as to each cause of action. Id.; see also Morales v.

Mw Bronx, Inc., No. 15-CV-6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016)

(collecting cases).

       As to damages, Federal Rule of Civil Procedure 55(b)(2) "allows but does not require"

the district court to conduct a hearing on the damages amount. Bricklayers & Allied

Craftworkers Local 2, Albany, N.Y. Pension Fund, 779 F.3d at 189 ("[T]he court may conduct

such hearings or order such references as it deems necessary and proper.") (internal quotation

marks and citation omitted); see also Cement & Concrete Workers Dist. Council Welfare Fund v.

Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). Additionally, although well-

pleaded allegations as to liability are deemed admitted by a defaulting defendant, the same is not true for damages. See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.") (internal citation and quotation marks omitted). Off-White bears the burden of establishing an evidentiary basis for the damages sought against the Defaulting Defendants. See Bricklayers & Allied Craftworkers Local 2, Albany N.Y. Pension Fund, 799 F.3d at 189; Int'l Ass'n of Heat & Frost Insulators v. Affiliated Envtl. Servs. NJ, Inc., No. 15-CV-6909 (LTS), 2017 WL 5153565, at *5 (S.D.N.Y. Nov. 6, 2017). Furthermore, "[w]here a plaintiff seeks damages on the theory that each individual acting alone infringed a work, rather than joint and severally, a court must assess damages with respect to each individual defendant such that the rights of the Defaulting Defendants are not compromised by the virtue of their being joined in the same action." Spin Master Ltd. v. 158, 463 F. Supp. 3d 348, 370 (S.D.N.Y. 2020), adhered to in part on reconsideration by, No. 18-CV-01774 (LJL), 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020) (citation omitted).

Here, Off-White's submissions have not been contested, and the submissions provide all the information needed to determine damages. As such, a hearing on damages is not necessary.

**B.  Personal Jurisdiction**

As a preliminary matter, it is necessary to determine whether the Court has personal jurisdiction over the Defaulting Defendants, all of whom are alleged to be located in China. ECF No. 7 at ¶ 22. Although the Court exercised personal jurisdiction over the Defaulting Defendants when it issued the TRO and the preliminary injunction, "it is appropriate for the Court to assure itself that it has personal jurisdiction over those defendants it purports to bind indefinitely" by

issuance of a default judgment. Spin Master Ltd., 463 F. Supp. 3d at 361 (citing Sinoying

Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010)).

 In cases raising a federal claim, where the statute does not provide for nationwide service,

the personal jurisdiction rules of the forum state apply. See, e.g., Schentag v. Nebgen, No. 17-

CV-08734 (GHW), 2018 WL 3104092, at *15 (S.D.N.Y. June 21, 2018) (citing PDK Labs, Inc.

v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997)). New York's personal jurisdiction rules

apply here because the Lanham Act does not provide for nationwide service. Alibaba Grp.

Holding Ltd. v. Alibabacoin Foundation, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *6

(S.D.N.Y. Apr. 30, 2018).

 In New York, a court engages in a two-step analysis to determine whether there is

personal jurisdiction over a non-domiciliary in a trademark or copyright case. Spin Master Ltd.,

463 F. Supp. 3d at 362. At step one, the court applies New York's long-arm statute, and at step

two, which takes place only if the long-arm statute permits personal jurisdiction, the court

analyzes "whether personal jurisdiction comports with the Due Process Clause of the United

States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir.

2010).

 Off-White asserts that there is personal jurisdiction over each of the Defaulting

Defendants pursuant to C.P.L.R. § 302(a)(1) and (a)(3). See ECF No. 7 at ¶ 3. Under C.P.L.R.

§ 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in

person or through an agent . . . transacts any business within the state or contracts anywhere to

supply goods or services in the state[.]" Two requirements must be met to establish personal

jurisdiction under § 302(a)(1): "(1) [t]he defendant must have transacted business within the

state; and (2) the claim asserted must arise from that business activity." Eades v. Kennedy, PC

Law Offs., 799 F.3d 161, 168 (2d Cir. 2015) (quoting Licci ex rel. Licci v. Lebanese Canadian

Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)).

A foreign defendant, like the Defaulting Defendants here, does not need to be physically

present in the forum state, but rather must engage in a "purposeful activity" through which the

foreign defendant "purposefully avail[s] [themself] of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws." Spin Master Ltd.,

463 F. Supp. 3d at 362 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). A "single act of

selling counterfeit goods into New York satisfies" the requirement of C.P.L.R. § 302(a)(1).

Chloe, 616 F.3d at 170 (internal quotation marks omitted). Additionally, a "website's

interactivity may be useful for analyzing personal jurisdiction insofar as it helps to decide

whether the defendant transacts any business in New York" under § 302(a)(1). Id. (citing Best

Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007)) (internal quotation marks omitted).

The Defaulting Defendants used eBay's e-commerce platform to sell counterfeit Off-

White products to consumers in New York. See ECF No. 7 at ¶¶ 33-37. The complaint alleges

that the Defaulting Defendants were selling, or attempting to sell, counterfeit Off-White products

on their eBay storefronts to consumers in New York. See id. at ¶¶ 3.a., 3.c., 3.d. Off-White

substantiated this allegation by submitting at least three documents for each Defaulting

Defendant: (1) a screenshot of the infringing listing for each Defaulting Defendant, which

displayed a particular counterfeit Off-White product; (2) a screenshot of the Defaulting

Defendant's eBay storefront; and (3) a photograph of the checkout page for the counterfeit Off-

White product, showing confirmation that the product can be shipped to the New York address

of Off-White's counsel. See, e.g., ECF No. 7-3 at 1-7. These screenshots from eBay's website

ties each Defaulting Defendant to a specific counterfeit Off-White product and to the attempted sale of that counterfeit product to a consumer in New York. See ECF No. 7 at ¶ 33.

The single act of shipping a counterfeit product into New York is sufficient to establish jurisdiction over Defaulting Defendants, and Off-White has confirmed that Defaulting Defendants sold and/or offered for sale counterfeit Off-White products on the online marketplace, eBay (ECF No. 7 at ¶¶ 3, 26, 33-34; ECF Nos. 7-3, 7-4, 7-5). See Kelly Toy Holdings, LLC v. Baoding Mi Xiaomei Trading Co., Ltd., No. 21-CV-6029 (LGS) (SLC), 2022 WL 6246622, at *5 (S.D.N.Y. July 18, 2022), report and recommendation adopted by, 2022 WL 4298730 (S.D.N.Y. Sept. 19, 2022) (finding that personal jurisdiction existed over foreign defendants where evidence showed that defaulting defendants had offered for sale counterfeit products on e-commerce sites Alibaba and AliExpress); Off-White LLC v. 5HK5584, No. 19-CV-00672 (RA) (JLC), 2020 WL 1646692, at *4 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted by, 2020 WL 3050552 (S.D.N.Y. June 8, 2020) (finding personal jurisdiction over foreign defendants because "New York customers are able to order goods for delivery" in New York on eBay.com).

Even for a Defaulting Defendant that did not make an actual sale to a New York consumer, Off-White has shown that Defaulting Defendants offered the counterfeit Off-White product for sale on their eBay storefront to a New York customer, and courts in this District have found that sufficient to demonstrate a defaulting defendant's purposeful availment of the privileges of conducting activities in New York. See, e.g., WowWee, 2019 WL 1375470, at *4; Pinkfong Co. v. 7 Day Store, No. 22-CV-4133, 21-CV-4135 (PAE) (JLC), 2023 WL 7274684 (S.D.N.Y. Nov. 2, 2023) (adopting R&R finding personal jurisdiction where defaulting defendants offered for sale counterfeit product to New York consumers on e-commerce

websites). Moreover, eBay is the type of "interactive" e-commerce site upon which a finding of personal jurisdiction may be based. See, e.g. Kelly Toy Holdings, 2022 WL 6246622, at *5 (holding that eBay is "an interactive website [which] supports a finding of personal jurisdiction over the defendant") (internal citation and quotation marks omitted). Finally, because the sale of counterfeit trademarks is prohibited under the Lanham Act, 15 U.S.C. § 1114(1)(a)-(b), Defaulting Defendants' "business transaction"— the offer and/or sale of the counterfeit products in New York—has a substantial relationship with the claim asserted in this action. Spin Master Ltd., 463 F. Supp. 3d at 364. In short, because each Defaulting Defendant sells and/or offers to sell to New York consumers on an interactive e-commerce website, the Court has personal jurisdiction under § 302(a)(1) over each Defaulting Defendant.

Additionally, the assertion of personal jurisdiction over Defaulting Defendants comports with due process, because Defaulting Defendants "regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York." ECF No. 7 at ¶ 3. Due process requires "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945) (quotation omitted). This standard is satisfied without further inquiry by state long-arm statutes, like C.P.L.R. 302, that permit the exercise of jurisdiction in a narrower range of circumstances than the Due Process Clause. Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, for the reasons discussed, the Court has personal jurisdiction over Defaulting Defendants.

### C. Liability

Off-White seeks damages only in connection with its claims under the Lanham Act brought in Counts I and II of the complaint. See ECF No. 31 at 13 n.2. Therefore, "the Court considers the Defaulting Defendants' liability as to their violation of the Lanham Act alone." 5HK5584, 2020 WL 1646692, at *4; see also Coach Servs., Inc. v. K Ya Int'l Inc., No. 09-CV-4656 (RMB) (JCF), 2010 WL 2771897, at *2 (S.D.N.Y. June 10, 2010), report and recommendation adopted by, 2010 WL 2771907 (S.D.N.Y. July 12, 2010) ("In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability need only be considered with respect to that claim")

The Lanham Act imposes liability on any person who, in connection with the sale, offering for sale, or distribution of a good, either uses a counterfeit of a registered or unregistered mark or counterfeits such mark in advertising or packaging materials when such use or counterfeiting is likely to cause confusion. 15 U.S.C. §§ 1114(1)(a)-(b), 1125; Allstar Marketing Grp., LLC v. 123 Beads Store, No. 19-CV-3184 (AJN), 2020 WL 5836423, at *3 (S.D.N.Y. Sept. 30, 2020). To prevail on a Lanham Act trademark counterfeiting or infringement claim, a plaintiff must establish that the infringed mark is valid and "entitled to protection," and that "use of the allegedly infringing mark 'is likely to cause consumer confusion as to the origin or sponsorship' of the products to which it attached." Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016) (quoting Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). A certificate of registration with the Patent and Trademark Office "is prima facie evidence that the mark is registered and valid (i.e. protectible)[.]" Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999).

Additionally, a plaintiff can establish consumer confusion through the factors laid out

in Polaroid v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). However, a court "need not undertake a factor-by-factor analysis under Polaroid" in the case of counterfeits "because counterfeits, by their very nature, cause confusion." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003); see also Coach, Inc. v. Horizon Trading USA, Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012); Spin Master, Ltd., 463 F. Supp. 3d at 368. The Lanham Act defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Off-White has established both elements of a trademark counterfeiting and infringement claim as to the Defaulting Defendants. First, Off-White alleges that it is the owner of 22 U.S. Trademark Registrations for certain "Off-White Marks" that are currently in use in commerce in connection with Off-White products. See ECF No. 7 at ¶¶ 12-13. Off-White has submitted a copy of the U.S. Patent and Trademark Office's registration certificates for all its registered Off-White Marks. See ECF No. 7-2 at 1-43. "A certificate of registration with the Patent and Trademark Office is prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Coach, Inc., 908 F. Supp. 3d at 433 (quoting Lane Capital Mgmt., Inc., 192 F.3d at 345)).

Second, Off-White has established that the marks on the counterfeit products sold by the Defaulting Defendants are likely to cause confusion because they are demonstrably counterfeit. As an initial matter, counterfeit products, by their nature, are likely to cause confusion. See e.g., BTL Industries, Inc. v. Versalini Beauty & Spa Salon, No. 23-CV-8617 (LJL), 2024 WL 3342293, at *4-5 (S.D.N.Y. July 8, 2024); Kelly Toys Holdings, LLC v. Airpods Pro Store, No. 21-CV-8435 (LJL), 2022 WL 2801077, at *4 (S.D.N.Y. July 18, 2022). Here, Off-White alleges

that the Defaulting Defendants are offering for sale and/or selling on eBay counterfeit products bearing the Off-White Marks. ECF No. 7 at ¶¶ 25-26, 33-37. Moreover, the complaint includes side-by-side images of an Off-White product and the counterfeit Off-White product that is offered for sale by each of the Defaulting Defendants. See ECF Nos. 7-3, 7-4, 7-5. The examples of the counterfeit products sold by the Defaulting Defendants bear a mark that is "confusingly similar" to the protected Off-White Mark. See, e.g., ECF No. 7 at ¶¶ 35-37; see also ECF Nos. 7-3, 7-4, 7-5. Accepting Off-White's allegations in the complaint as true, the counterfeit products offered for sale by the Defaulting Defendants are "virtually identical to one of [Off-White's] products and incorporate copies or colorable imitations of marks on their product packaging." WowWee Grp. Ltd. v. Meirly, No. 18-CV-706 (AJN), 2019 WL 1375470, at *7 (S.D.N.Y. Mar. 27, 2019). As such, Off-White has established its trademark counterfeiting and infringement claims against the Defaulting Defendants in Counts I and II of the complaint. Default judgment as to those claims is therefore warranted.

### D. Damages

#### 1. Statutory Damages

Off-White requests statutory damages totaling $1,200,000, or $75,000 for each of the 16 Defaulting Defendants. ECF No. 40 at Conclusion. Off-White seeks only statutory damages because, due to the Defaulting Defendants' failure to appear in this case, Off-White has been "deprived of the ability to prove a specific amount of actual damages." Id. at ¶ 60.

Under the Lanham Act, at any time before final judgment is entered, a trademark owner may elect to recover an award of statutory damages, rather than actual damages, in cases of infringement. 15 U.S.C. § 1117(c)-(d); see also Off-White v. Ali Jr., No. 19-CV-1775 (PAE) (SN), 2021 WL 11643206, at *8 (S.D.N.Y. July 23, 2021), report and recommendation adopted

by, 2021 WL 3914077 (S.D.N.Y. Sept. 1, 2021). For the use of a counterfeit mark, a court may award statutory damages in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c); see also All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd., 775 F. Supp. 3d 613, 620-21 (S.D.N.Y. 2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters.").

Although 15 U.S.C. § 1117(c) instructs courts to award a "just" amount and establishes a cap on the award, it "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citation and quotation marks omitted). Accordingly, "courts in this District have looked to the analogous provision in the Copyright Act for guidance, 17 U.S.C. § 504(c), and have considered" the following factors in determining an appropriate amount of statutory damages: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." 5HK5584, 2020 WL 1646692, at *6 (citing Philip Morris USA Inc. v. A&V Minimarket, Inc., 592 F. Supp. 2d 669, 673 (S.D.N.Y. 2009)). A court has broad discretion to balance the factors in determining an appropriate statutory damages award. Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) ("Within these

17

statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs.") (internal quotation marks and citation omitted).

The analysis of the first and second factors is identical for all Defaulting Defendants and both factors weigh in favor of Off-White. The full extent of the profits reaped by the Defaulting Defendants and the revenue lost by Off-White as a result of the infringing activity of each Defaulting Defendant is unknown. ECF No. 40 at ¶ 57. As a result of the failure of each defendant to appear, Off-White was "deprived of the ability to prove a specific amount of actual damages[.]" Id. at ¶ 60. The effect of the default is that the Defaulting Defendants have not responded to the evidence of counterfeit sales with evidence of their own, such as expenses incurred that might reduce a damages award. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 168-69 (S.D.N.Y. 1999); see also Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973 (2d Cir. 1985) ("Where the defendants fail to produce evidence to refute plaintiffs' evidence of defendants' sales of counterfeit products, the court must rely on less certain methods of proof."). In situations such as this, courts generally "resolve[] any uncertainty" in favor of the plaintiff with respect to the first two factors "so as not to allow the Defaulting Defendants to benefit from their lack of participation in this litigation." Ideavillage Products Corp. v. Aarhus, No. 18-CV-02739 (JGK) (SDA), 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019), report and recommendation adopted by, 2019 WL 2287726 (S.D.N.Y. May 28, 2019).

The third factor—which examines the value of the trademark—also weighs in favor of Off-White. Off-White has not submitted evidence supporting a particular monetary value for its trademark. However, courts can "infer from the well-known reputations of most or all of the

trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." Polo Ralph Lauren v. 3M Trading Co., No. 97-CV-4824 (JSM) (MH), 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999). Here, the evidence shows that the Off-White Marks are valuable. At the time the complaint was filed, Off-White was the owner of a "young, successful and high-end lifestyle streetwear line of men's and women's apparel[.]" ECF No. 7 at ¶ 7. Off-White sells a wide range of products bearing its Off-White Marks, including accessories, jewelry, homeware, and other ready-made goods. Id. Off-White's sales are made through luxury retailers such as Bergdorf Goodman, as well as Off-White's boutiques located in prominent cities, such as Paris, Shanghai, and New York City. Id. at ¶ 9. Off-White's products are featured in prominent publications such as *Vogue*, *New York Magazine*, and *GQ*, and the *Lyst* recently named Off-White the "hottest fashion brand in the World." Id. at ¶ 10. Additionally, Off-White has put considerable effort into marketing and promotional efforts related to its products, utilizing both internet-based and print advertising. Id. at ¶ 15. Off-White's marketing, promotions, and distribution, as well as the quality of its products and the "word-of-mouth buzz generated by its consumers," has resulted in its products acquiring "a valuable reputation and goodwill among the public." Id. at ¶ 18-19.

The fourth factor examines the scale of the Defaulting Defendants' infringement. The scale of infringement is greatly heightened in the case of online counterfeiting, because online marketplaces like eBay provide a "'virtually limitless number of customers' for the counterfeit products." Kelly Toys Holdings LLC, 2022 WL 2801077, at *7 (quoting Streamlight, Inc. v. Gindi, No. 18-CV-987 (NG), 2019 WL 6733022 at *13 (E.D.N.Y. Oct. 1, 2019), report and recommendation adopted by, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019)) see also Rolex Watch, U.S.A., Inc. v. Pharel, No. 9-CV-4810 (RRM) (ALC), 2011 WL 1131401, at *5

(E.D.N.Y. Mar. 11, 2011), <u>report and recommendation adopted by</u>, 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011) (finding that the use of three websites by defendants to sell counterfeit products weighed in favor of the fourth factor). "'Courts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range[,]'" such as eBay's platform here, which the Defaulting Defendants used to offer their counterfeit products for sale to customers worldwide. <u>WowWee Grp. Ltd.</u>, 2019 WL 1375470, at *10 (quoting <u>Spin Master v. Alan Yuan's Store</u>, 325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018)). The fact that these sales occurred on a website that permits sales nationwide, combined with the general "need to deter other possible infringers," ultimately weighs in favor of an award to Off-White. <u>WowWee Grp. Ltd.</u>, 2019 WL 1375470, at *10; <u>see also</u>, <u>5HK5584</u>, 2020 WL 1646692 at *7 (finding factor four in plaintiff Off-White's favor where defaulting defendants sold products through eBay).

The fifth factor—willfulness—also weighs in favor of Off-White. "An infringement is willful where the defendant had knowledge or recklessly disregarded the possibility that its actions constituted infringement." <u>Spin Master Ltd.</u> 463 F. Supp. 3d at 374 (quoting <u>Streamlight</u>, 2019 WL 6733022, at *13.) Because the Defaulting Defendants have defaulted, their infringement is "*per se* willful." <u>Ali Jr.</u>, 2021 WL 11643206, at *9 (internal citation and quotation marks omitted). In addition, the "use of marks that are 'virtually identical' to the registered marks renders 'inescapable' the conclusion that the defendant's infringement and counterfeiting was intentional." <u>WowWee Grp.</u>, 2019 WL 1375470, at *10 (quoting <u>Coach, Inc. v. Melendez</u>, No. 10-CV-6178 (BSJ) (HSP), 2011 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), <u>report and recommendation adopted by</u>, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011)). As discussed, the marks on the counterfeit products at issue here are virtually indistinguishable from

the Off-White Marks. See ECF No. 7 at ¶¶ 35-38. This factor therefore weighs in Off-White's favor with respect to each of the Defaulting Defendants.

The sixth factor measures the degree of cooperation by the Defaulting Defendants. Some courts look to whether the defendant has engaged in an "[a]ctive effort to mislead the court about continued willful counterfeiting," which "is a traditional aggravating factor in statutory damages[.]" Sara Lee, 36 F. Supp. 2d at 168. Other courts have "construe[d] this element against defendants who fail to answer or appear, thus preventing the exchange of comprehensive discovery." Streamlight, 2019 WL 6733022, at *14. In general, "it is more appropriate to look to whether the defendant has engaged in an effort to conceal the fact or scale of its wrongdoing or to mislead the plaintiff or the court about the existence or scale of counterfeiting." Kelly Toys Holdings, LLC, 2022 WL 2801077, at *7 (citing Spin Master, 463 F Supp. 3d at 374). In this case, the factor of "cooperation is neutral." Kelly Toys Holdings, LLC, 2022 WL 2801077, at *7. Off-White alleges that "Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits." ECF No. 7 at ¶ 28. This allegation, however, does not demonstrate that "Defendants took active steps to conceal their identities or to avoid detection, nor [has Off-White] presented evidence (including in the form of an expert affidavit) that would support that conclusion." Kelly Toys Holdings, LLC, 2022 WL 2801077, at *7. On the current record, this factor does not support a heightened damages award for Off-White. See Ali Jr., 2021 WL 11643206, at *10.

The seventh and final factor is the potential for deterring the Defaulting Defendants. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); see also Bumble and Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14-CV-6911 (VEC) (JLC), 2016 WL

21

658310, at *5 (S.D.N.Y. Feb. 17, 2016), report and recommendation adopted by, 2016 WL
1717215 (S.D.N.Y. Apr. 27, 2016) (explaining that an award of statutory damages will serve as a
"specific deterrent" to the defendants as well as a "general deterrent to others who might
consider engaging in infringing conduct in the future"). This factor considers the need for
deterrence and the nature of the defendant's conduct. Ali Jr., 2021 WL 11643206, at *10. With
counterfeit goods, such as the goods at issue here, the "need to deter. . . is particularly
compelling[.]" Bumble and Bumble, LLC, 2016 WL 658310, at *5. As discussed, the Defaulting
Defendants used a mark on their products that is identical, if not substantially indistinguishable,
to the Off-White Marks. ECF No. 7 at ¶¶ 35-38. And, given the fame of the Off-White Marks,
Defendants knowingly used a counterfeit mark on their products. Id. at ¶¶ 39-40. This factor
therefore also weighs in Off-White's favor. See Moonbug Entm't Ltd. v. All Night Revelry
Store, No. 21-CV-10315 (LGS)(JLC), 2023 WL 116565, at *6 (S.D.N.Y. Jan. 6, 2023), report
and recommendation adopted by, 2023 WL 1402072 (S.D.N.Y. Jan. 31, 2023) (finding this
factor in plaintiff's favor where defaulting defendants engaged in willful counterfeiting).

As discussed above, Off-White seeks statutory damages under the Lanham Act of
$75,000 for each Defaulting Defendant. Such an award falls well within the range of awards
granted by courts in this District in similar circumstances. See Golden Goose Deluxe Brand v.
Aadct Official Store, No. 19-CV-2521 (VSB) (GWG), 2020 WL 3167031, at *5 (S.D.N.Y. June
15, 2020), report and recommendation adopted by, 2020 WL 6157012 (S.D.N.Y. Oct. 21, 2020)
(collecting cases). Given the factors discussed above, a statutory damages award of $75,000
against each Defaulting Defendant is appropriate and consistent with awards in similar cases,
where sales information from each defendant concerning the counterfeit product is not available.
See Off-White LLC v. adagio, No. 19-CV-676 (RA) (JLC), 2020 WL 1646673, at *7-8

(S.D.N.Y. Apr. 3, 2020), <u>report and recommendation adopted by</u>, 2020 WL 3050383 (S.D.N.Y. June 8, 2020) (awarding $100,000 per defaulting defendant where defendants' engaged in counterfeiting and failed to participate in the litigation thereby depriving "Off-White of any records from which to assess the value of the infringing materials"); <u>Off-White LLC v. ^_^Warm House^_^ Store</u>, No. 17-CV-8872 (GBD) (GWG), 2018 WL 4927905 at *5 (S.D.N.Y. Oct. 11, 2018), <u>report and recommendation adopted in part by</u>, 2019 WL 418501 (S.D.N.Y. Jan. 17, 2019) (awarding Off-White $100,000 per defaulting defendant engaged in trademark infringement where no records were available to assess the value of defendants' infringement); <u>Palace Skateboards Grp. v. Global Outlet Store</u>, No. 20-CV-6103 (GBD) (SN), 2024 WL 4534668 at *5 (S.D.N.Y. Sept. 6, 2024) (awarding $75,000 in damages per defendant where defaulting defendants engaged in online counterfeiting and "have not cooperated or provided any records"); <u>Golden Goose S.P.A. v. Adashoe001</u>, No. 20-CV-2122 (PKC), 2020 WL 5569583 at *3 (S.D.N.Y. Sept. 16, 2020) (awarding $75,000 against each defaulting defendant engaged in trademark infringement given "the difficulty in ascertaining actual damages in light of defendants' failure to appear"). Accordingly, I respectfully recommend that Off-White be awarded statutory damages in the amount of $75,000 for each of the 16 Defaulting Defendants, for a total statutory damages award of $1,200,000.

      2.  <u>Post-Judgment Interest</u>

      Off-White also seeks post-judgment interest on any damages award. ECF No. 40 at Conclusion. "Post-judgment interest is awarded on any money judgment recovered in a civil case." <u>Alan Yuan's Store</u>, 325 F. Supp. 3d at 426 (citing 28 U.S.C. § 1961). Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, . . . for the calendar week preceding[] the date of judgment." 28

U.S.C. § 1961(a). Accordingly, I respectfully recommend that Off-White be awarded post-judgment interest in an amount to be determined according to the statutory formula set forth in 28 U.S.C. § 1961.

    3.   <u>Asset Freeze and Transfer</u>

Finally, Off-White seeks an order extending the pre-judgment freeze on Defaulting Defendants' assets, a transfer of those assets to Off-White, and post-judgment interest on Defaulting Defendants' frozen assets. ECF No. 32 at 26-35. Off-White argues that the Court has the authority to enter the continued freeze and transfer order as to the Defaulting Defendants' assets under Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and the Court's inherent equitable power, or, in the alternative, pursuant to N.Y. C.P.L.R. § 5225, while also allowing Off-White to serve a restraining notice on third-party financial services providers involved with Defaulting Defendants pursuant to C.P.L.R. § 5222. ECF No. 32 at 26-35.

Rule 64 of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." In New York, Section 5225 of the New York Civil Practice Law and Rules authorizes a court to compel a nonparty to surrender a judgment debtor's property. N.Y. C.P.L.R. § 5225. Section 34(a) of the Lanham Act provides that the Court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of" a trademark owner's rights. 15 U.S.C. § 1116(a).

Federal Rule of Civil Procedure 69 and C.P.L.R. § 5222 also govern the enforcement of money judgments in New York federal courts. <u>See</u> <u>Spin Master Ltd.</u>, 463 F. Supp. 3d at 383. Rule 69(a)(1) provides that "[t]he procedure on execution—and in proceedings supplementary to and

in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). In New York, Section 5222 of the New York Civil Practice Law and Rules permits a judgment creditor to serve a restraining notice on a judgment debtor which prohibits the judgment debtor from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which [it] has an interest," except in limited circumstances. N.Y. C.P.L.R. § 5222(b). Thus, once a defendant is found liable and a money judgment is rendered against it, a district court sitting in New York has the power to restrain that defendant's assets. See e.g., ^_^Warm House^_^ Store, 2019 WL 418501, at *6-7 (motion for post-judgment asset restraint granted); WowWee Grp. Ltd. v. Haoqin, No. 17-CV-9893, 2019 WL 1316106, at *6 (S.D.N.Y. Mar. 22, 2019) (same).

Courts in this District are divided as to the appropriateness of entering a post-judgment asset freeze and transfer order on a defendant that has defaulted. Many courts in this District have read C.P.L.R. § 5225 to permit a New York district court to restrain a defendant's assets once that defendant has been found liable and a money judgment has been entered against the defendant. See e.g., Off-White LLC v. Baoding Springru Trade Co., Ltd., No. 19-CV-00674 (RA) (JLC), 2020 WL 1646602, at *8-9 (S.D.N.Y. Apr. 3, 2020), report and recommendation adopted by, 2020 WL 3050553 (S.D.N.Y. June 8, 2020) (motion for post-judgment asset restraint granted); Haoqin, 2019 WL 1316106 at *6 (same); ^_^Warm House^_^ Store, 2019 WL 418501, at *6-7 (same). In this view, where a plaintiff has requested "an accounting of the Defendants' profits attributable to the infringing activity, equitable remedies such as an asset freeze may be sought as part of an action for an accounting of profits." Baoding Springru Trade Co., Ltd., 2020 WL 1646602, at *8 (citing Gucci Am. Inc. v. Bank of China, 768 F.3d 122, 131 (2d Cir. 2014)); see Tiffany (NJ) LLC v. Forbse, No. 11-CV-4976 (NRB), 2015 WL 5638060, at *3-4 (S.D.N.Y. Sept. 22, 2015). Once a

defendant's assets are frozen, courts have then relied on "the authority to issue injunctive relief under Rule 64 of the Federal Rule of Civil Procedure, § 1116(a) of the Lanham Act, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief." Baoding Springru Trade Co., Ltd., 2020 WL 1646602, at *9 (quoting ^_^Warm House^_^ Store, 2019 WL 418501, at *6); see also, Alan Yuan's Store, 325 F. Supp. 3d at 427-28 (ordering transfer of infringing defendants' frozen assets to plaintiff). Courts often order this asset freeze and transfer order to address the concern that, absent this relief, "defendants would have . . . a fourteen-day window [under Federal Rule of Civil Procedure 62(a)] in which to hide their assets." Forbse, 2015 WL 5638060, at *4.

Conversely, other courts in this District have concluded that they "lack[] the power to impose the post-judgment asset restraint and transfer[.]" Spin Master Ltd., 463 F. Supp. 3d at 383; Allstar Mktg. Grp. v. 158 et al., No. 18-CV-4101 (GHW), 2019 WL 3936879, at *3-4 (S.D.N.Y. Aug. 20, 2019); see also Off-White LLC v. 0225XIANGCHUN, No. 19-CV-11626 (KPF), 2020 WL 3618963, at *2 (S.D.N.Y. July 2, 2020) (declining to issue a post-judgment asset freeze and transfer order); WowWee Grp. Ltd., 2019 WL 1375470, at *11 (explaining that the remedy for plaintiffs "concerned about the risk that Defaulting Defendants will dispose of, transfer, or hide their assets," are the "remedies ordinarily applicable to enforcement of judgments of law under Rule 69 and N.Y. C.P.L.R. § 5222").

In Spin Master Ltd., while discussing plaintiff's request for a post-judgment asset freeze and transfer under F.R.C.P. 64, 65 and 15 U.S.C. § 1116(a), the Court noted that Rule 69 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 5222 "establish a carefully designed regime that permits a plaintiff to execute on its judgment while also protecting the rights of third parties to the assets that may be used to satisfy that judgment." 463 F. Supp. 3d at 383-84. The Court in

Spin Master concluded that the plain language of Rule 69 and C.P.L.R. § 5222 "require that notice and an opportunity to be heard be given to third parties in possession of, or who may be entitled to, those assets before transfer[,]" thereby requiring that notice be given to "all persons who have competing, and perhaps superior, interest[s]" in the assets of the Defaulting Defendants'. Id. at 384.

Consistent with the Court's reasoning in Spin Master, I recommend denial of Off-White's request for a post-judgment asset freeze and transfer of the Defaulting Defendants' assets. Such an order would give Off-White "rights superior to those of other creditors that Congress did not intend them to have" because "a financial institution holding an asset of a Defaulting Defendant necessary to satisfy the judgment would have to transfer that asset to [Off-White] upon the mere request of [Off-White]" and do so "even if another third party had a superior claim to that asset," "without providing prior notice," and "on pain of contempt if they failed to comply." Id. (citing All-Star Mktg. Grp., 2019 WL 3936879, at *4). Such an order would essentially make Off-White's interests in the Defaulting Defendants' assets superior over any other unknown third party who may also have an interest in those assets, and without any notice or avenue for relief. See Spin Master, 463 F. Supp. 3d at 380 (noting that the post-judgment freeze and transfer order "would have the Court grant them a blank check and permit them to freeze unknown assets in unknown accounts"); 0225XIANGCHUN, 2020 WL 3618963, at *2 ("Plaintiff's requested relief would require unknown third-party financial institutions to transfer the Defaulting Defendants' assets to Plaintiff, irrespective of whether other creditors held a superior claim to those assets."). Such an outcome is also inconsistent with the language in C.P.L.R. § 5222 and § 5225, which "require that notice and an opportunity to be heard be given to third parties in possession of, or who may be entitled to, those assets before transfer." Spin Master Ltd., 463 F. Supp. 3d at 384.

Accordingly, I recommend denying Off-White's request for a post-judgment asset freeze and transfer. Nevertheless, to protect against the risk that the Defaulting Defendants may dispose of assets before Off-White can enforce any monetary award, I recommend that Off-White be permitted to execute and enforce a judgment immediately. Federal Rule of Civil Procedure 62(a) provides that "execution on a judgment and proceedings to enforce it are stayed [automatically] for 30 days after its entry, unless the court orders otherwise." Id. at 385. The rule "expressly recognizes the court's authority to dissolve the automatic stay or supersede it by a court-ordered stay" where doing so may protect against a risk that the judgment debtor's assets will be dissipated. Fed. R. Civ. P. 62 advisory committee's note (2018); see also Allstar Mktg. Grp., LLC, 2019 WL 3936879, at *4 n.6 (noting that the district court has the power to terminate the automatic stay). Here, "[l]ifting the automatic stay imposed by Rule 62(a) protects Off-White's ability to collect on its judgment while preserving the interests of any unknown third parties." Ali Jr., 2021 WL 11643206, at *15. Therefore, I recommend that Off-White be permitted to "execute on and enforce the judgment immediately." Spin Master Ltd., 463 F. Supp. 3d at 386.

## CONCLUSION

For the foregoing reasons, I recommend that Off-White be awarded $1,200,000 in statutory damages under the Lanham Act, or $75,000 against each of the 16 Defaulting Defendants. I further recommend that Off-White receive post-judgment interest on the amount of the judgment. Additionally, I recommend that Off-White's request for a post-judgment order freezing each Defaulting Defendants' assets and authorizing the transfer of those assets to Off-White be denied, but that Off-White be permitted to execute on and enforce the judgment immediately.

DATED:      New York, New York
                    December 9, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge

\*                     \*                     \*

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Paul A. Engelmayer. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**